

# SEALED

Office of the United States Attorney
District of Nevada
501 Las Vegas Boulevard South,
Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336

JASON M. FRIERSON
United States Attorney
Nevada Bar No. 7709
BIANCA R. PUCCI
Assistant United States Attorney
Nevada Bar No. 16129
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
Fax: (702) 388-6418
Bianca.Pucci@usdoj.gov
*Attorneys for the United States*

FILED.

DATED: 11:27 am, August 07, 2023

U.S. MAGISTRATE JUDGE

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC RAMIREZ,<br>aka "DRACO,"<br><br>Defendant. | Case No. 2:23-mj-707-BNW<br><br>**COMPLAINT**<br><br>VIOLATIONS:<br><br>18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D) – Engaging in the Business of Dealing or Manufacturing Firearms Without a License<br><br>18 U.S.C. §§ 933(a)(1), and 924(d) – Trafficking in Firearms<br><br>21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi)– Distribution of a Controlled Substance |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned Complainant, being duly sworn, deposes and states:

**COUNT ONE**
*Engaging in the Business of Dealing or Manufacturing Firearms Without a License*
(18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D))

Beginning on or about June 8, 2023, and continuing up to and including August 3, 2023, in the State and Federal District of Nevada,

**ERIC RAMIREZ**, **aka "Draco,"**

1

defendant herein, not being a licensed dealer and manufacturer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in and manufacturing firearms, all in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D).

### COUNT TWO
*Trafficking in Firearms*
(18 U.S.C. §§ 933(a)(1), 924(d)(1))

Beginning on or about June 26, 2023, and continuing up to and including on or about August 3, 2023, in the State and Federal District of Nevada,

**ERIC RAMIREZ**, **aka "Draco,"**

defendant herein, knowingly transferred and disposed of firearms to another person, in or affecting interstate or foreign commerce, knowing or having reasonable cause to believe that the use, carrying, and possession of said firearms by the recipient would constitute a felony, as defined in 18 U.S.C. § 932(a), all in violation of Title 18, United States Code, Section 933.

### COUNT THREE
*Distribution of a Controlled Substance (Fentanyl)*
(21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi))

On or about July 10, 2023, in the State and Federal District of Nevada,

**ERIC RAMIREZ**, **aka "Draco,"**

defendant herein, knowingly and intentionally distributed 40 grams or more of a mixture and substance containing a detectible amount of fentanyl, a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(vi).

### PROBABLE CAUSE AFFIDAVIT

Your Complainant, as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), states the following as and for probable cause:

1.      Your Complainant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), a component of the United States Department of Justice, and has been so employed since September of 2015. Your Complainant is currently assigned to the ATF Las Vegas Group II Crime Gun Intelligence Task Force.

2.      The following information contained within this criminal complaint is based upon Your Complainant's participation in this investigation as well as information and reports provided to me by other law enforcement personnel. This statement does not include all information in reference to this investigation, but rather only those facts necessary to establish probable cause. All times are approximate.

## FACTS ESTABLISHING PROBABLE CAUSE

3.      On or about June 8, 2023, a confidential informant (CI[1]-1) informed your Complainant of an individual recognized by the moniker "Draco," who was later identified as ERIC RAMIREZ. CI-1 informed agents that RAMIREZ utilizes the cellular phone number (XXX) XXX-5949.[2] CI-1 informed your Complainant that RAMIREZ was engaged in narcotics trafficking, specifically prescription Percocet pills. CI-1 informed your Complainant that RAMIREZ utilizes the Instagram account "bgmssotw2xx" to advertise narcotics for sale. Your Complainant reviewed the public Instagram account and observed what appeared to be RAMIREZ in possession of a handgun in his front pants pocket, which was posted to the account on or about June 6, 2023. Further, your Complainant noted a Telegram link in the "bio" section of the Instagram account "bgmssotw2xx." The Telegram link directs the user to a

---

[1] This person has received pecuniary payments for his/her assistance. The information provided to ATF by CI-1 has, to date, been found to be credible and much of it has been corroborated. CI-1's information has proven reliable in the past on several investigations. CI-1 has arrests for Domestic Battery and Displaying Fictitious Registration, but no convictions appear on CI-1's criminal background.

[2] The full number is known to investigators.

3

Telegram chat named "Exotic Budz" with the following description, "Best prices in town, mobile $80+ ** ALL NEW CUSTOMERS MUST VERIFY FIRST BEFORE BUYING**." Your Complainant reviewed past posts made by the admin of the Telegram account and noted a menu of various narcotics as depicted below:



4. The aforementioned menu was posted on June 5, 2023. Your Complainant recognized the menu to be written in various street vernacular terms, which your Complainant understood to be prices for quantities of cocaine ("yay," "❄," "fish scale" or "🐟") , MDMA ("molly" and "💊") , marijuana ("maui candy," "lemon cherry poppers," and "orange sherbert"), and other narcotics (prescription medication "Adderal" and "shrooms," meaning mushrooms).

5.  During June 2023, Nevada High Intensity Drug Trafficking (HIDTA) Intelligence Analysts determined that the phone number (XXX) XXX-5949 was associated with ERIC RAMIREZ (DOB XX-XX-2003).[3] Your Complainant reviewed a booking photograph of RAMIREZ, which was captured during May 2023, and compared it to various images posted to the Instagram account "bgmssotw2xx." Your Complainant recognized that the individual depicted in the images posted to the account "bgmssotw2xx" appeared to be RAMIREZ.

6.  On or about June 14, 2023, your Complainant provided RAMIREZ's cell phone number of (XXX) XXX-5949, which was previously provided to your Complainant by CI-1, to CI-2[4] in order to arrange a narcotics transaction with RAMIREZ. Between June 14, 2023, and June 16, 2023, CI-2 had recorded phone text messages with RAMIREZ. During these phone contacts, RAMIREZ agreed to sell CI-2 suspected fentanyl pills.

7.  On or about June 16, 2023, the ATF conducted a controlled purchase operation in which RAMIREZ sold approximately 6.35 grams of suspected fentanyl pills (approximately 50 blue pills marked "M" and "30") to CI-2. Prior to the transaction, CI 2 and RAMIREZ agreed to conduct the transaction in the Las Vegas, Nevada area. During the transaction, surveillance units observed a black Toyota Camry arrive near the CI vehicle. Moments later, RAMIREZ exited the Camry and entered the CI vehicle. As RAMIREZ entered the CI vehicle,

---

[3] The full date of birth is known to investigators.

[4] CI-2 has been working for the ATF for approximately three years and has also received pecuniary payments for his/her assistance. CI-2's information has proven reliable in the past on several investigations. All information provided by CI-2 is corroborated by law enforcement investigators. CI-2 signed cooperation agreement and pleaded guilty to one count of Conspiracy to Make a False Statement in Acquisition of a Firearm and one count of Conspiracy to Distribute a Controlled Substance in an unrelated investigation. CI-2 is working for consideration of his/her charges. Additionally, CI-2 has several arrests for narcotic related offenses, driving violations, probation violations, felon in possession of firearm, and stolen property offenses. CI-2 was convicted in 2009 for attempt possession of a firearm by felon and in 2004 for two counts of trafficking a controlled substance.

he explained to CI-2 that he only had "50" pills. During this time, RAMIREZ was observed holding a clear plastic bag containing blue pills:



8.     Moments later, CI-2 handed RAMIREZ $175.00 in prerecorded US currency for the suspected fentanyl pills. Moments later, CI-2 questioned RAMIREZ if he had "burners" for sale. In your Complainant's training and experience, the term "burners" is street vernacular for a firearm. RAMIREZ responded by stating, "oh yeah, I be having those burners for sale." RAMIREZ continued to state that he has them all the time, and that he just had a "10 milli." In your Complainant's training and experience, "10 milli" refers to a type of firearm capable of accepting 10mm Auto ammunition, such as a Glock 20, 10mm Auto semi-automatic handgun.

9.     The suspected fentanyl pills purchased from RAMIREZ on June 16, 2023, were later analyzed by a Drug Enforcement Agency (DEA) forensic chemist. The analysis resulted in the net weight of 5.41g (+/- 0.01g). Further, the analysis resulted in fentanyl being identified in the tested units.

10.    Between June 20, 2023, and June 27, 2023, CI-2 had recorded text messages with RAMIREZ by contacting cellular phone number (XXX) XXX-5949. During these phone

contacts, RAMIREZ agreed to sell CI-2 suspected fentanyl pills, a firearm, and a "Glock switch" or machinegun conversion device (MCD).

11. On or about June 27, 2023, the ATF, LVMPD, and other law enforcement agencies conducted a controlled purchase operation in which RAMIREZ sold approximately 17.44 grams of suspected fentanyl pills (approximately 150 blue pills marked "M" and "30"), a Ruger Security-9 Pistol bearing S/N: 384-65620, and assorted rounds of 9mm ammunition to CI-2. Prior to the transaction, CI-2 and RAMIREZ agreed to conduct the transaction in the Las Vegas, Nevada area. Prior to CI-2's arrival at the predetermined meeting location, surveillance units observed the Camry arrive. A short time later, the Camry reposition near the CI's vehicle. Moments later, RAMIREZ exited the Camry and entered the CI vehicle. CI-2 handed RAMIREZ $1,400.00 of pre-recorded currency for the firearm and suspected fentanyl pills. RAMIREZ then handed CI-2 the Ruger Security-9 Pistol bearing S/N: 384-65620, as depicted below:



12. RAMIREZ handed CI-2 the ammunition, firearm, and suspected fentanyl pills. RAMIREZ did not provide CI-2 with the MCD at that time. CI-2 informed RAMIREZ that

he/she wanted the "switch," meaning a type of MCD commonly referred to as a "Glock switch." RAMIREZ informed CI-2 that the MCD was far, which CI-2 understood to mean that the source of the MCD was not located nearby and that it was too far away to obtain the MCD at that time. Shortly thereafter, RAMIREZ exited the CI vehicle stating, "I got you" and "I be having them all the time." In your Complainant's training and experience, these two phrases meant that RAMIREZ will consistently provide firearms and narcotics to CI-2 due to his regular supply of such items.

13. The suspected fentanyl pills purchased from RAMIREZ on June 27, 2023, were later analyzed by a DEA forensic chemist. The analysis resulted in the net weight of 16.59g (+/- 0.01g). Further, the analysis resulted in fentanyl being identified in the tested units.

14. Between June 28, 2023, and June 30, 2023, CI-2 had recorded text messages with RAMIREZ by contacting cellular phone number (XXX) XXX-5949. During these phone contacts, RAMIREZ agreed to sell CI-2 a firearm and an MCD.

15. On or about June 30, 2023, the ATF conducted a controlled purchase operation in which RAMIREZ sold a privately made firearm (PMF) .40 caliber pistol, a "Glock switch" style MCD, and assorted ammunition to CI-2. Prior to the transaction, CI-2 and RAMIREZ agreed to conduct the transaction in the Las Vegas, Nevada area. The Camry arrived and parked behind the CI vehicle. At or about this time, RAMIREZ text messaged CI-2 the following, "One ight behind u waiting for my brotha to come out with the switch." A short time later, surveillance units observed the Camry reposition near the CI's vehicle. Surveillance units then observed an unidentified white male adult (WMA) walk from the direction of an apartment complex nearby and to the Camry in which RAMIREZ was seated. The WMA entered the Camry, occupying the front passenger seat. Moments later, RAMIREZ exited the Camry via the driver door and entered the CI vehicle. RAMIREZ then stated, "here's the

switch right here" to CI-2 while holding an MCD in his hand. Below is a screen capture of RAMIREZ holding the MCD:



16. RAMIREZ then handed the MCD and an un-serialized PMF .40 caliber pistol to CI-2. CI-2 handed RAMIREZ $500.00 of pre-recorded currency for the MCD and $1,100.00 of pre-recorded currency for the PMF pistol. A short time later, RAMIREZ exited the CI vehicle.

17. The MCD was later examined by an ATF Firearms Enforcement Officer (FEO). Upon examination, the ATF FEO determined that that MCD was designed and intended to convert a weapon into machinegun.

18. On or about July 7, 2023, your Complainant conducted a Federal Firearms Licensee (FFL) database query to determine if RAMIREZ was licensed to deal firearms. The query resulted in RAMIREZ not having, nor has he ever applied for, an FFL license.

19. Between July 7, 2023, and July 10, 2023, CI-2 had recorded text messages with RAMIREZ by contacting cellular phone number (XXX) XXX-5949. During these phone contacts, RAMIREZ agreed to sell CI-2 suspected fentanyl pills and an MCD.

20. On or about July 10, 2023, the ATF and the LVMPD conducted a controlled purchase operation in which RAMIREZ sold approximately 56 grams of suspected fentanyl pills, and a "Glock switch" style MCD to CI-2. Prior to the transaction, CI-2 and RAMIREZ agreed to conduct the transaction in the Las Vegas, Nevada area. The Camry arrived near the CI vehicle and RAMIREZ exited the Camry from the driver's door and enter the CI vehicle. Moments later, RAMIREZ handed CI-2 the previously discussed MCD while stating, "this the switch right here brodie," reference image below.



21. RAMIREZ continued to state, "this the pills right here," while holding an aluminum zip lock type bag with graphics on it. Moments later, CI-2 handed RAMIREZ $600.00 of prerecorded currency for the MCD and $1,500.00 of prerecorded currency for the previously agreed upon amount of 500 (approximately 56 grams) of suspected fentanyl pills.

22. The suspected fentanyl pills purchased from RAMIREZ on July 10, 2023, were later analyzed by a DEA forensic chemist. The analysis resulted in the net weight of 54.4g (+/- 0.02g). Further, the analysis resulted in fentanyl being identified in the tested units.

23. The MCD purchased on July 10, 2023, was later examined by an ATF FEO. Upon examination, the ATF FEO determined that that MCD was designed and intended to convert a weapon into machinegun.

24. Between July 10, 2023, and July 11, 2023, CI-2 had recorded text messages with RAMIREZ by contacting cellular phone number (XXX) XXX-5949. During these phone contacts, RAMIREZ agreed to sell CI-2 firearms.

25. On or about July 11, 2023, the ATF conducted a controlled purchase operation in which RAMIREZ sold a Glock 17 Gen 4 9mm semi-automatic pistol, bearing serial number "BHGW774" and a PMF un-serialized semi-automatic pistol to CI-2. Prior to the transaction, CI-2 and RAMIREZ agreed to conduct the transaction in the Las Vegas, Nevada area. The Camry arrived and parked near the CI vehicle. Surveillance units observed RAMIREZ exit the Camry from the driver's door and enter the CI vehicle. RAMIREZ informed CI-2 that his "boy" had a "Glock 23 40" with a "switch with a titty" and a "beam" on it. Your Complainant understood "switch" to mean MCD and "titty" to mean a button, or selector that can be adjusted to make a firearm fire from semi-automatic to automatic. RAMIREZ further explained that firearm was "barely out the store." CI-2 informed that he/she doesn't care if the firearms are out of the store because he/she can't walk in the store to buy them. CI-2 stated that he/she is a "2-time convicted felon" to which RAMIREZ acknowledged saying "hell yeah" and chuckled. CI-2 questioned RAMIREZ if the total was "13" to which RAMIREZ affirmed. The CI counted out $1,300 of previously documented funds. CI-2 then asked what the cost of the other one was, to which RAMIREZ informed CI-2 that he/she only needed to provide "9" even though "ese" said "950". CI-2 counted out $900 of previously documented funds. CI-2 informed RAMIREZ that he/she will be going out of town but will be back in a couple days. CI-2 re-stated that he/she does not care if firearms are coming out of the store as he/she cannot

go into the store to buy them, further stating "you already know" stating, "I did six years" to which RAMIREZ affirms. RAMIREZ informed CI-2 that he will stock the CI-2 up on Sunday. Shortly after, RAMIREZ exited the CI vehicle.

26. Between July 23, 2023, and July 26, 2023, CI-2 had recorded text messages with RAMIREZ by contacting cellular phone number (XXX) XXX-5949. During these phone contacts, RAMIREZ agreed to sell CI-2 firearms and suspected fentanyl pills.

27. On or about July 26, 2023, the ATF and HSI conducted a controlled purchase operation in which RAMIREZ sold the following to CI-2: one PMF, .45 caliber, un-serialized, semi-automatic pistol; one ABC Rifle Company; ABC-15; Caliber, Multi, bearing S/N "77-10195"; and approximately 56 grams (approximately 500 pills) of suspected fentanyl pills, blue in color. Prior to the transaction, CI-2 and RAMIREZ agreed to conduct the transaction in the Las Vegas, Nevada area. The Camry arrived and parked near the CI vehicle. Surveillance units observed RAMIREZ exit the Camry from the driver's door and enter the CI vehicle. Moments later, RAMIREZ removed an AR style rifle from what appeared to be a red jacket with a black interior, reference video still image below:



28. RAMIREZ then removed a 1911 style PMF pistol from his right waistband area. RAMIREZ then removed a plastic bag containing blue pills from his left waistband area. CI-2 then handed RAMIREZ $800.00 in pre-recoded currency for the 1911 style pistol, $1,500.00 for the previously agreed upon amount of 500 suspected fentanyl pills, and $1,900.00 for the AR style rifle. RAMIREZ then handed CI-2 $50.00 due to the previously agreed price of $1,850.00 for the AR style rifle. Moments later, CI-2 questioned RAMIREZ regarding "switches" meaning "Glock switches," or MCD's. RAMIREZ advised the CI that he would call his "boy" and see what he has. RAMIREZ stated that "he" has two, one of which is metal with "Glock" on it.

## CONCLUSION

29. Based upon the information set forth in this application, your Complainant respectfully submits that there is probable cause to believe that ERIC RAMIREZ committed the offenses of 18 U.S.C. § 922(a)(1)(A), *Dealing, Importing, or Manufacturing a Firearm Without a License*; 18 U.S.C. § 933(a)(1), *Trafficking in Firearms*; and 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), *Distribution of a Controlled Substance (Fentanyl)*.

_____
Brandon May, Special Agent
Alcohol, Tobacco, Firearms, and Explosives
(ATF)

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on the 7th day of August, 2023.

_____
HONORABLE BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

13